UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Eric Wilim, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  - against -<br><br>7-Eleven, Inc.,<br><br>    Defendant | 1:22-cv-04886<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1. 7-Eleven, Inc. ("Defendant") manufactures, packages, labels, markets, and sells spicy jalapeño peanuts represented as "Flavored" under the 7-Select brand ("Product").



2. The representation of "Flavored" is false and misleading because this fails to disclose the spicy jalapeño taste is due, in part, to artificial flavoring.

I. CONSUMER AVOIDANCE OF ARTIFCIAL FLAVORS

3. According to the Wall Street Journal, "As consumer concern rises over artificial ingredients, more food companies are reconstructing recipes" to remove artificial flavors.[1]

4. Natural flavor refers to the "essential oil, oleoresin, essence or extractive" from fruits or vegetables, "whose significant function [] is flavoring rather than nutritional." 21 C.F.R § 101.22(a)(3).

5. Artificial flavor is "any substance, the function of which is to impart flavor" from sources other than fruits or vegetables. 21 C.F.R § 101.22(a)(1).

6. According to Paul Manning, chief executive officer and president of Sensient Technologies, "Consumer desire for naturally flavored products is an emerging trend."[2]

7. Recent surveys report that over eighty percent of Americans believe that foods with artificial flavor are less healthy than those with only natural flavors.

8. According to Nielsen, the absence of artificial flavors is very important for over 40% of respondents to their Global Health & Wellness Survey.

9. The trade journal, Perfumer & Flavorist, described "The Future of Artificial Flavors & Ingredients" as bleak, given consumer opposition to these synthetic ingredients.[3]

10. Mintel announced that consumer avoidance of artificial flavors is just as strong as

---

[1] Lauren Manning, How Big Food Is Using Natural Flavors to Win Consumer Favor, Wall Street Journal.
[2] Keith Nunes, Using natural ingredients to create authentic, fresh flavors, Food Business News, Sept. 20, 2018.
[3] Jim Kavanaugh, The Future of Artificial Flavors & Ingredients, Perfumer & Flavorist, June 12, 2017.

their desire for natural flavors, in its Report, "Artificial: Public Enemy No. 1."[4]

11. Surveys by Nielsen, New Hope Network, and Label Insight concluded that between sixty and eighty percent of the public seeks to avoid artificial flavors.

12. Though most people think the flavor of jalapeño and green bell peppers is due exclusively to capsaicinoids responsible for their characteristic burning (pungency) sensation, these compounds are not technically sensed by our taste buds.

13. Instead, the heat sensation experienced is due to irritation of sensory receptors.

14. Like other fruits, jalapeños rely on a combination of sugars and organic acids to provide their underlying spicy, peppery, and tart flavor.

## II. LABEL OMITS ADDED ARTIFICIAL FLAVORING

15. The Product's primary or "characterizing" flavor is "Spicy Jalapeño," from jalapeño peppers, because the label makes "direct [] representations" about this ingredient through words, "Jalapeño," pictures of jalapeños, and shades of green for background color matching the color of jalapeños. 21 C.F.R. § 101.22(i).

16. Federal and identical state regulations require the Product to disclose the source of its jalapeño flavor on the front label, i.e., from jalapeños, natural sources other than jalapeños, natural jalapeño flavors, and/or artificial, synthetic sources. 21 C.F.R. § 101.22(i).

17. By representing the Product only as "Flavored," consumers will expect the taste to come from the identified ingredients and/or natural flavors derived from said ingredients.

18. Though the seasoning includes "Jalapeno Pepper," it also includes "[Natural and]

---

[4] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019; Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018; Nancy Gagliardi, Consumers Want Healthy Foods – And Will Pay More For Them, Forbes, Feb 18, 2015.

Artificial Flavors."



**INGREDIENTS:** PEANUTS, SEASONING (SALT, JALAPEÑO PEPPER, DEXTROSE, MALTODEXTRIN, GREEN BELL PEPPER, CITRIC ACID, MALIC ACID, SPICE EXTRACTIVE, SOYBEAN OIL [AS A PROCESSING AID], NATURAL AND ARTIFICIAL FLAVORS), PEANUT OIL.

19. Federal and state regulations require that because the artificial flavor provides a jalapeño taste, "Spicy Jalapeño" is required to "be accompanied by the word(s) 'artificial' or 'artificially flavored,'" such as "Artificial Spicy Jalapeño Flavored" or "Artificially Flavored Spicy Jalapeño." 21 C.F.R. § 101.22(i)(2).

### III. CONCLUSION

20. The Product contains other representations and omissions which are false and misleading.

21. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

22. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

23. As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $2.99 for 2.25 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

24. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

25. The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

26. Plaintiff Eric Wilim is a citizen of Grayslake, Illinois, Lake County.

27. Defendant 7-Eleven, Inc. is a Texas corporation with a principal place of business in Irving, Texas, Dallas County.

28. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

29. The members of the proposed classes Plaintiff seeks to represent are more than 100, because the Product is sold at thousands of 7-11 locations, and available online through delivery, in the States of the proposed classes.

30. Venue is in this District and assignment is in the Eastern Division because Plaintiff resides in Lake County, and the representations and omissions, and his reliance on them and awareness they were misleading occurred here.

Parties

31. Plaintiff Eric Wilim is a citizen of Grayslake, Illinois, Lake County.

32. Defendant 7-Eleven, Inc. is a Texas corporation with a principal place of business in Irving, Texas, Dallas County.

33. 7-Eleven is a multinational chain of convenience stores founded in 1927 as an icehouse storefront in Dallas.

34. There are over 9,500 7-Eleven stores in the United States.

35. While 7-Eleven stores sell leading national brands, they sell a large number of products under one of their private labels, 7-Select.

36. Private label products are made by third-party manufacturers and sold under the name of the retailer.

37. Previously referred to as "generic" or "store brand," private label products have increased in quality, and often are superior to their national brand counterparts.

38. Products under the 7-Select brand have an industry-wide reputation for quality and value.

39. Defendant stated that in releasing products, "under the 7-Select name, [their] first and foremost requirement was to create high-quality products that were equal to or better than the national brands."

40. That 7-Select branded products met this high bar was proven by focus groups.

41. Private label products generate higher profits for retailers because national brands spend significantly more on marketing, contributing to their higher prices.

42. A survey by The Nielsen Co. "found nearly three out of four American consumers believe store brands are good alternatives to national brands, and more than 60 percent consider them to be just as good."

43. Private label products under the 7-Select brand benefit by their association with consumers' appreciation for the 7-11 brand as a whole.

44. The development of private label items is a growth area for 7-11, as they select only top suppliers to develop and produce 7-Select products.

45. The Product is sold at the thousands of 7-11 locations in the States covered by Plaintiff's proposed classes.

46. Plaintiff read "Flavored Jumbo Peanuts – Spicy Jalapeño" and saw pictures of the two jalapeños and jalapeño slices and believed the Product got its spicy jalapeño taste from this ingredient.

47. Plaintiff is part of the majority of consumers who avoid artificial flavors, based on their beliefs that foods with artificial flavor are less healthy than those without them.

48. Plaintiff did not expect the jalapeño taste was from artificial jalapeño flavoring because, in his experience, this is the type of information which is typically disclosed to consumers on the front label.

49. Plaintiff relied on the words, terms coloring, descriptions, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, claims, statements, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

50. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at 7-Eleven locations including 92 W Belvidere Rd Hainesville, IL 60030, between 2020 and 2022, and/or among other times.

51. Plaintiff bought the Product at or exceeding the above-referenced price.

52. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

53. Plaintiff paid more for the Product than he would have paid had he known the representations were false and misleading, as he would not have bought it or paid less.

54. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance its representations are consistent with its composition.

55. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other similar flavored peanuts which fail to disclose their taste is not only from the identified ingredient and flavor derived from said ingredient, because he is unsure whether those representations are truthful.

## Class Allegations

56. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Alabama, New Jersey, Montana, Alaska, Texas, Arizona, New Mexico, Mississippi, Utah, Nebraska, South Carolina, Tennessee, and Virginia who purchased the Product during the statutes of limitations for each cause of action alleged.

57. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

58. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

59. Plaintiff is an adequate representative because his interests do not conflict with other members.

60. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

61. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

62. Plaintiff's counsel is competent and experienced in complex class action litigation

and intends to protect class members' interests adequately and fairly.

63. Plaintiff seeks class-wide injunctive relief because the practices continue.

## Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, et seq.

64. Plaintiff incorporates by reference all preceding paragraphs.

65. Plaintiff relied on the representations and omissions to believe the Product's taste was from the identified ingredient and that it did not contain artificial flavor simulating said ingredient.

66. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Violation of State Consumer Fraud Acts (Consumer Fraud Multi-State Class)

67. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

68. The members of the Consumer Fraud Multi-State Class were harmed in the same manner as Plaintiff, and reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statutes invoked by Plaintiff.

## Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.

69. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that its taste was from the identified ingredient and that it did not contain artificial flavor simulating said ingredient.

70. Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

71. Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as taste from the identified ingredient instead of artificial flavor simulating said ingredient, and developed its marketing and labeling to directly meet those needs and desires.

72. The representations were conveyed in writing and promised the Product would be defect-free, and Plaintiff understood this meant that its taste was from the identified ingredient and that it did not contain artificial flavor simulating said ingredient.

73. Defendant affirmed and promised that the Product's taste was from the identified ingredient or natural flavors derived from said ingredient, instead of artificial flavor simulating said ingredient.

74. Defendant described the Product so Plaintiff and consumers believed its taste was from the identified ingredient and that it did not contain artificial flavor simulating said ingredient, which became part of the basis of the bargain that it would conform to its affirmations and promises.

75. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

76. This duty is based on Defendant's outsized role in the market for this type of product, custodian of the 7-Select brand, a private label known for quality exceeding national brands.

77. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

78. Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

79. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

80. The Product did not conform to its affirmations of fact and promises.

81. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if its taste was from the identified ingredient and that it did not contain artificial flavor simulating said ingredient.

82. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected its taste was from the identified ingredient and that it did not contain artificial flavor simulating said ingredient, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

## Negligent Misrepresentation

83. Defendant had a duty to truthfully represent the Product, which it breached.

84. This duty is based on its position, holding itself out as having special knowledge and experience this area, custodian of the 7-Select brand, a leading seller of private label products.

85. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant, a globally recognized and iconic brand.

86. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

## Fraud

87. Defendant misrepresented and omitted that the Product's taste was from the identified

ingredient and that it did not contain artificial flavor simulating said ingredient

88. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity and deception, through statements and omissions.

## Unjust Enrichment

89. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3. Awarding monetary, statutory, and/or punitive damages pursuant to applicable laws;

4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

5. Other and further relief as the Court deems just and proper.

Dated: September 9, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com